Our 7th case for this morning is United States v. Lamon. All right, Mr. Rice. May it please the Court, Jordan Rice for Appellant Aaron Lamon. The U.S. sentencing guidelines require a drug count and a felon in possession count to be grouped when the defendant is also guilty of a 924c offense. Relying on this Court's decision in U.S. v. Sinclair, the District Court did not group Mr. Lamon's drug and felon in possession counts. This was contrary to the guidelines plain text and the approach of courts, probation offices, and U.S. attorneys' offices around the country. So, Mr. Rice, I mean, obviously, you know, there are serious arguments on both sides of this point. They've been fleshed out in other circuits. They were fleshed out, in our opinion, in Sinclair. But has anything happened since Sinclair that would justify our taking another look at this question? Or is this really now something that's just sitting around on the plate that the Supreme Court might decide to take up if it decides to go expand its docket a bit? So no other courts, as the government in their brief, did not cite a single decision of another court that's followed Sinclair since Sinclair. And after Sinclair, the 11th Circuit in Fonseca, which was filed after the opening brief in this case and before the reply. Well, Sinclair was decided just last year. Sinclair was a 2014 decision, so there's been four years since it was decided. The 11th Circuit, the 6th Circuit, the 3rd Circuit, and the 8th Circuit in Bell, which was pre-Sinclair, have all come down on the side of Mr. Layman's approach. But you would say, so you're saying, you're arguing that there are four post-Sinclair circuits? No. No. No. Only Fonseca and the 11th Circuit. Just the 11th. That's correct. So since Sinclair, one other circuit has lined up in the anti-Sinclair camp. Correct. And I realize that Sinclair is a barrier here, but Rule 40E gives this court the authority to overrule past precedent. And while stare decisis will normally weigh against this, it doesn't here because Sinclair was incorrectly decided. It perpetuates a circuit split. It works a substantial injury, and overturning it will not upset reliance interests. Well, we circuited at 40E, though, in the first place. Sinclair. Yes, that's correct. However, Sinclair was incorrectly decided. It's contrary to the plain text of the guidelines. Under the guidelines, counts involving substantially the same harm are grouped together. This isn't just a general background principle of the guidelines. It's explicit in the text of 3D1.2. In subsection C, the key provision in this case gives a simple shorthand for knowing when two counts involve substantially the same harm. It says to group counts when one count embodies conduct that is treated as a specific offense characteristic in the guideline applicable to another count. This directs courts to look at the relevant guidelines, which are the sections in Chapter 2 applicable to offenses under the U.S. Code, and to review them on their face. What Sinclair did was add a step to this inquiry. It directs courts not to look just at the relevant guidelines, but to look at their ultimate application in a particular case. But 3D1.2C says nothing about analyzing the guidelines as applied. It uses the phrase guidelines applicable. Sinclair is, for that reason, contrary to the text. So the best argument for you, the argument against you is that we just thought about this in 2014 and came out a particular way on this issue. I suppose the best argument for you is if you can make the case that we're an outlier. Sometimes we save the Supreme Court the trouble of having a per curiam opinion reversing us to bring the circuits in line with one another. But the outlier's status has existed for a while now, four years. In fact, the Eleventh Circuit decided the U.S. versus King in 2006. So we disregarded the Eleventh Circuit when we decided Sinclair, right? King wasn't as on point as Fonseca. Fonseca used it as prime precedent, though, right? Correct. Although that case was not a published opinion. It was a per curiam as is Fonseca. But we knew in Sinclair that there were, particularly the Eighth Circuit's Bell case, right? We realized that's why there was a 4D circulation. We realized we were creating a conflict. That doesn't mean that it's not perfectly legitimate. I just want to say for the sake of getting it out there. You're entitled to ask, you know, to acknowledge a bad precedent and ask us to take another look at it. That's where we are in this instance. And if our opinion is not standing the test of time, it's not standing the test of time. Or maybe it is. I mean, these are difficult statutes to work with because there's an inherent overlap between 922G and 924C. And then even with the 841 in, they're kind of a mishmash of statutes. And the Supreme Court hasn't wanted double counting. So they wanted to be careful that the 924C wasn't, you know, having too much of an effect on the 922G. And so we did sort through it one way in Sinclair, which is unfortunately for your client a way that led to two more guidelines. Let me ask you whether you think it made a big difference here. Because actually what the judge does is he goes down to the 24 months, right, that it would have been if it had been the grouping that you wanted. That's correct. Is there a harmful error here? Yes. So this court presumes reversible error even on a plain error standard where there's an incorrectly calculated guideline range. And the only time the court will find harmless error in that sort of circumstance is when the district judge is clear that the sentence would have been the same regardless of the error. And we don't have any such statement here from the district court. In fact, what the district court said is simply that he was issuing a sentence near the guideline range. He thought that was most appropriate. So my guess would be on remand that he would do the same thing again and Mr. Lehman would get six, seven months off the sentence due to the two-level decrease in his guidelines range. But we don't know for sure right now, which is why this court remands in this sort of circumstance. He goes below the guidelines down to the 24, but the 24 was the bottom of the range that you were arguing for, right? It is, but there's no clear statement from the court that that is why he issued a 24-month sentence. All he said that he thought something near the lower end of the guideline range was correct. All we can do is guess as to what the district court judge would do on remand. And going back to reasons for reconsidering Sinclair is the injury that this case works. Drug and gun counts are frequently charged together. There are about 2,000 924C convictions in 2016. About half of those were for an underlying drug count. And then 70% of 924C offenders had a criminal history category of two or higher. So that's approximately 700 defendants every single year. And for Mr. Lehman, it was an increase in his guideline range of six to seven months. But for some defendants, it can go up to two years. So there's a real substantial injury here that makes it worth taking a look again at Sinclair, particularly the plain text argument that wasn't presented in that case that deals with the term the guideline. So remind me. Sinclair was decided, I'm thinking, at a time before the Supreme Court decided that district courts didn't need to give any. If you had a 924C with a mandatory consecutive, you could have a sentence of one month on the underlying. And Sinclair's decided before that case comes out. Correct. I don't know if that makes any difference, but it might. It's possible on remand that Mr. Lehman would get one day with respect to the sentence consecutive to his 924C offense. That is a possibility. There are no further questions at this time. I'd like to reserve the remainder of the rebuttal. Sure. Mr. Walters. Good morning, Your Honors, and may it please the Court. Greg Walters on behalf of the United States. Judge Wood, if I could just pick up right at the end. You were making reference to Dean v. United States, United States v. Dean. That opinion, counsel brought up that, well, he could get a one-day sentence going back. He could have gotten that here because this was a pre-Dean sentencing, or this was a post-Dean sentencing. So Dean has no effect on remand any more than it had pre-appeal. What year was Dean? Dean, I think, 2017? No, but he's sentenced in, oh, this guy. Okay. Yeah. His sentencing is which day? I just mean this particular. He was sentenced in 2017, I think. Middle of 2017. Or 18. Yeah, I think it's 17. So Sinclair was a pre-Dean decision. If anything, the Supreme Court's decision in Dean counsels against this being a, quote, substantial injustice when our- Well, that's what I don't know. I'm just trying to think how Dean affects the Sinclair rule, actually. Well, Sinclair was based on the text of the guideline, or in the application 05. So I don't think ultimately Dean has any impact on how the statute or the guidelines should be interpreted. It has an impact, perhaps, in the argument by counsel that this is wrong and, therefore, works a substantial injury when our courts have even greater flexibility post-Dean to impose, to take into account the 60-month sentence in formulating what is an appropriate sentence for the other two counts. But regardless, what I'd like to bring up, Judge Wood, you commented at the very beginning of counsel's argument that we have, quote, serious arguments on both sides. That means that Sinclair's reasonable, Bell in the Eighth Circuit is a reasonable interpretation, and that is not a compelling reason to overturn circuit precedent, that there are debatable- I hate to say, but it does occasionally happen. One thing that's a great advantage of our 40E rule is that if we discover that we have become an outlier circuit on a particular point, particularly something like the interpretation of the guidelines, which the Sentencing Commission can go back and revisit, they can fix it one way or the other, is to say, well, we're not going to insist that we're going to wait until the Supreme Court tells us that we're outliers. We'll fix it if there are reasonable views either way. I agree. That is an intervening circumstance. But this court's, quote, being a serious outlier- Which is what we did when we decided- Counsel. Which is what we did when we decided this- In fact, I wouldn't even say you were a serious outlier back in 2014. Well, we still circulated 40E. Well, we created a conflict in the circuit, which is why we did 40E. You created a conflict with one circuit. Right. What you still had back then, that you still have today, that every court that has specifically addressed this issue other than this court in Sinclair, the Eighth Circuit in Bell, has issued an unpublished decision. And I've heard members of- Well, it's on SACA. Well, not only that, but the Third Circuit in Miyares, the Sixth Circuit in Gibbs, the Eleventh Circuit in United States v. King. Mr. Walters, you may be making an unfortunate point about the use of unpublished or non-presidential orders, which is that they may be overused. And they may be. But I've also heard members of this court state during argument before that decisions are unpublished. Well, we've changed the rule, though, to a certain extent. Well, you've changed the rule under 32.1 to being able to cite after 2007. But they are still unpublished for a reason, whatever it is. I'm not privy to what happens in chambers or after this court hears this case. There are wild differences among the circuits, as you undoubtedly know, in the use of such devices. Well, we want to use the Ninth Circuit as an example. Yes. I was thinking of them. Well, I have the privilege of practicing here. And the thing is that the legal landscape today is no different than it was in 2014. This court is no more of an outlier today than it was in 2014 when it split ways with the Eighth Circuit. And the unvarnished question of whether a decision is wrong is insufficient to overrule circuit precedent. Absent of being undermined by a Supreme Court decision or a supervening development such as, in this case, a sentencing commission, seeing the conflict and resolving it, which I would say, Judge Wood, is far more likely than the Supreme Court ever taking up a guideline interpretation issue. I agree with you about that. Yes, you're right. In fact, I think they don't take them. Generally, I can't remember the last time that the Supreme Court has taken an interpretation issue. They'll take the Pew ex post facto issue or retroactivity issue like in Beckles, but interpretation issue, generally not. Unless there are questions from the panel, we would ask that the court affirm the judgment of the district court. All right. Thank you. Thank you. Anything further, Mr. Rice? One further reason for reconsidering Sinclair was this court's decision in U.S. v. Cherry, which there involved exactly the same situation we have in this case and in Sinclair. Oh, we didn't really discuss Sinclair. In fact, we didn't, period. Sinclair was not discussed, but in that case, you have a probation office, U.S. Attorney's Office, defense counsel, a district court, which has an independent duty to apply the guidelines, and then three judges of this court say that that, not only to repeat simply what happened, but to say it was consistent with the guidelines. It isn't dicta. It doesn't overrule Sinclair, but it does give the court another reason to revisit. And with respect to this court being an outlier, these cases frequently arise. This is a guideline decision, just given the frequency of a felon in possession charge, a drug count, a 924C, that's arising all the time. And what's happening is that Bell's approach and the other surrogates' approach are being applied without comment, and the reason for this is that it's the most natural reading of the guidelines. So to correct, so I ask that the Seventh Circuit revisit Sinclair and remand this case for resentencing. Thank you. All right. Thank you, and thank you as well for accepting the appointment in this case. We appreciate your contributions. Thanks as well to your firm, and thank you, Mr. Walters. We'll take the case under advisement.